VILLAGE OF PETERSBURG, APPELLEE, V. JOHN J. CAREY, APPELLEE: CITIZENS STATE BANK, APPELLANT.

FILED JUNE 13, 1929. No. 26534.

*August Wagner* and *C. M. Skiles,* for appellant.

*Courtright, Sidner, Lee & Gunderson,* and *W. J. Donahue, contra.*

Heard before DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

THOMPSON, J.

This is an action brought by the village against appellant bank and Carey, appellee, praying for an accounting, and the cancelation of certain warrants claimed to have been wrongfully issued by Carey, who was at the time and had been for many years the treasurer of such village, and charging that many thousands of dollars of moneys belonging to the village and received by Carey, as such treasurer, had been by him and the said bank collusively and unlawfully converted to their respective uses without the knowledge or consent of the village. The funds so converted amounting to several thousand dollars, the village prayed that the exact amount be ascertained and that it have judgment against the respective defendants therefor as equity and justice might require, plaintiff being unaware of the specific amount each had received. Judgment was rendered against Carey and in favor of the village by the trial court in the sum of $9,789.02, and at the same time judgment was rendered against the bank for the sum of $3,573.72, with the provision that the bank "upon payment of this judgment against it shall have permission to apply to this court for a judgment against the defendant Carey for such amount as said bank may pay to the plaintiff." To reverse this judgment each defendant appealed separately.

The case as to Carey has been by us at this sitting determined, and will be found reported, p. 604, *post*. Appellant bank presents numerous reasons why the judgment against it should not be sustained, which will be considered as they are respectively reached.

A demurrer was interposed to the amended petition, in which it was alleged there was a misjoinder of causes of action, namely, cancelation of warrants and recovery of money alleged to have been converted. The petition specifically, as well as generaly, covered a vast number of dates on which specific amounts were claimed to have been received by Carey, and, through the collusion charged, converted to his own personal use, or to the use of the bank, and, as we find, it was deemed advisable in order that such respective conversions be not discovered that the village treasurer omit to make a record of the transaction. It was further found necessary that each transaction be noted in some way upon the books of the bank, but in a way not to disclose the source of the money or the rightful ownership thereof. Hence, it became necessary for the plaintiff to have, not only such records of the village treasurer as were available, but also the entire books of the bank covering these respective transactions, thus enabling plaintiff to trace a fund that it found had been paid to the treasurer from him into the bank, and into a certain account in such bank, as the bank had reported to the village authorities only such items as had been credited to the village, leaving the village officers uninformed as to the other items; thus, an accounting was necessary.

As to the warrants that the village prayed might be canceled: Without the books of the bank considered in connection with the books of the treasurer and the other records of the transactions in question, the village would have been hopelessly deficient in evidence. Hence, we conclude that, while the petition prayed for a personal judgment, it also indicated that before plaintiff could convince the court of its right to such accounting and judgment it must bring before the court the books and records of this

entire transaction for its consideration. It was not positively stated in the petition that the warrants were not held by the bank as its own property, but upon information and belief it is stated in the petition, as we infer, that the bank had parted with no consideration for the warrants, nor had there been a consideration given for the issuance of the warrants, but that the same had been issued by the village treasurer and delivered to the bank, as the bank well knew, for his own personal benefit, or without consideration. It will thus be seen that the equitable accounting preceded of necessity every step that was necessary to be taken by the trial court in reference to the granting to plaintiff of the relief that it prayed. Observing the facts heretofore mentioned with others of an equitable nature pleaded, it is concluded that the petition was not vulnerable to the challenge interposed, and that the demurrer was rightly overruled.

It is further contended that the court erred in not granting to defendant bank the right to a trial by jury. It will be plainly seen from the foregoing that this action was not one entitling the defendant to such a trial. Then, under the evidence, the conclusion of the trial court, as by it stated, is the only conclusion warranted; hence, no appreciable injury occurred.

This leaves the following questions remaining: Was the court warranted by the evidence introduced in rendering the personal judgment against this bank that it did, and charging it with interest at 7 per cent. on the respective items from the date of their found conversion to the date of the rendition of the judgment? When did the plaintiff's cause of action arise, at the time of the conversion or at the time of discovery thereof by the village? Further, had the statute of limitations run as to each or all of the items involved? These may, as we conclude, be determined under the same head, as the one logically follows and is controlled by the other. As to the respective items going to make up the amount of the judgment, there was ample evidence introduced to sustain the court's finding in reference to each. The computation of the interest also is found to be a

correct one. Each item represented an independent conversion and vested the village with authority to immediately proceed with the collection of the debt. This being true, it was entitled to interest thereon from the date that it could have initiated the action, and that at the rate of 7 per cent. per annum. This the court awarded, and no more.

As to the contention that action on these respective items had been barred by the statute of limitations, we must remember that it was by and through a collusive and intended fraud on the village perpetrated by Carey and the bank that these moneys were thus misappropriated, and that a part of the scheme was to prevent the village from becoming informed of such fraud, and in furtherance thereof the course was adopted of having the bank simply report to the village authorities only that part of the money which had actually come into the bank and had been deposited to the credit of the village. It is sufficient to say that the first knowledge the village had of these fraudulent transactions was obtained by it just shortly before instituting this action. It follows that the statute of limitations had not run. Hence, each of the afore-mentioned contentions are resolved in favor of the village and against the bank.

The other claimed errors presented have been examined, but are found not to give rise to reversible error.

The judgment of the trial court is

AFFIRMED.